### Elgin, Joliet & E. Ry. Co. v. James Duffy.

| 93 | 463 |
|---|---|
| a191s | 489 |

1. ORDINARY CARE—*A Question of Fact.*—The question as to whether a person sustaining injuries in a railroad accident was at the time acting within the bounds of ordinary care and caution, is a question of fact for the jury.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1900. Affirmed. Opinion filed February 13, 1901.

HOPKINS, HANCHETT & DOLPH and WILLIAM DUFF HAYNIE, attorneys for appellant.

W. J. TYERS and ALSCHULER & MURPHY, attorneys for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case brought by appellee,

James Duffy, against appellant, to recover damages for the loss of his right arm, occasioned by a collision of appellant's train with the wagon of appellee, at a street crossing in the city of Aurora. The declaration contained nine counts which, in substance, charged the appellant with negligence in not planking the entire width of the street at the crossing; in running its trains at a higher rate of speed than the limit fixed by the ordinance of the city; in permitting a freight car to remain upon the crossing at or near the middle of the street, causing plaintiff to drive off of the beaten track at the crossing; in not ringing the bell or sounding the whistle at the crossing, as required by statute; in running the train at a high rate of speed at a dangerous crossing, and in failing to use sufficient care in coming upon the crossing, which was obscured by buildings, embankments and trees, and the approach to which was sharply curved. It also charged that the servants of the company willfully and maliciously inflicted the injury in question. The general issue was filed and upon trial there was a verdict and judgment for plaintiff for $5,000.

Railroad street, in the locality where the accident occurred, runs nearly northeast and southwest, and appellant's main line crosses it almost at right angles. The main line of the Chicago, Burlington & Quincy Railroad runs parallel with Railroad street and about 200 feet west of it. Connecting the main line of appellant's road and the main line of the Chicago, Burlington & Quincy Railroad is a " Y " track, which crosses Railroad street on quite a sharp curve. The " Y " track is in a northerly direction from appellant's main track, and connects with it a short distance southeast of Railroad street. North of the " Y " track is what is known as the Esser switch, which leaves the former track a short distance west of Railroad street and runs in a southeasterly direction to a point some distance southeast of the street. Where the two last-named tracks cross Railroad street they are six or eight feet apart, and are provided with plank crossings in the middle of the street, about sixteen feet wide.

Appellant was engaged in hauling ties from cars placed on the Esser switch to a place where an electric railway was being constructed on River street, which is east of and parallel to Railroad street. The ties were unloaded on the north side of the Esser switch, and the tie cars reached from a point east of Railroad street into the street, one of them extending from two to four feet onto the plank crossing aforesaid. On account of an embankment north of the track it was necessary for appellee to drive close to the north side of the cars to Railroad street. At the time of the accident appellee had loaded his wagon from the car east of the street and had driven around the end of the car in the street across the Esser switch track. In going around the end of the car the turn was so short that he drove off of the planking to the west at the " Y " track. There was a sharp decline from the Esser track to the " Y " track, and when his wagon wheel struck the second rail of the latter, a portion of his loaded ties slipped off on the track and between the wheels, in such a manner that he could not drive off of the track. A man named Hord, who was timekeeper for the party constructing the street car track, was with him on the load at the time, and they both slipped off of the ties to the ground. Three men who were engaged in assisting to unload the ties from the cars came to appellee's assistance and started to replace them upon the wagon. Hord, at the request of the watchman in the switch tower near by, at the intersection of the railroads, went north on the " Y " track to flag appellant's switch train, which had previously gone up in that direction. When a few of the ties had been reloaded the switch train was seen by Hord coming down the track toward the crossing. He made signals for the purpose of stopping the train, but it did not stop, although its speed was slackened. Sullivan, one of the men engaged in putting the ties back on the wagon, saw the train coming, and at once gave the alarm, and cried to Duffy to " jump quick." At once Sullivan and the two other men assisting in reloading the ties stepped aside out of danger. Duffy, who was on the wagon, started to jump down, but the horses at that time

gave a jerk, which moved the wagon and threw him upon his knees. Before he could get off, the engine had struck the wagon, throwing him high into the air and some forty-five feet distant from where the wagon stood. The force of the collision threw the horses into the ditch and broke the wagon in two, throwing part of it on either side of the track. Appellee was found on the north side of the track with some ties and the hind axle of the wagon over him; his right arm was cut off, and he was otherwise injured.

Appellant claims that it was not negligent in the running of its switch train; that the placing of the car in the street, contrary to the ordinance, did not contribute to the accident, and that appellee was not entitled in law to recover, for the reason that he was guilty of contributory negligence. All these questions were submitted to the jury and we do not think it would be profitable here to discuss the evidence at length. It is sufficient to say that at the time the accident occurred, Railroad street was traveled by a great many people, the use of it having been increased by reason of the fact that River street, the next street east, was torn up for the construction of the electric road. The place where the accident occurred was on a sharp curve. There was a building next to the right of way about the point where the Esser switch leaves the " Y," some 200 feet from the crossing, and beyond that point the " Y " track could not be seen from the crossing. The crossing was a dangerous one under the circumstances and should have been approached with due care. The majority of the witnesses who testified upon the subject, swore the train was running at from fifteen to twenty miles an hour at the time it struck appellee, and also that the bell was not ringing nor the whistle sounding at the time. The fact that the car was left standing upon a portion of the crossing appears to have been the cause of appellee's driving off the end of the plank crossing on the " Y " and thereby causing part of the ties to fall off. Appellant was at the time acting contrary to the ordinance of the city both in regard to the rate of speed its train was running and in leaving the car in the street.

A man had been sent to flag the train and the parties engaged at the wagon had a right to suppose that the train men would approach that crossing with due caution, and would stop if possible, when they received a signal of danger. Whether appellee was at the time acting within the bounds of ordinary care and caution was a question of fact for the jury, and upon this and the other questions above noted it found for appellee. There was ample evidence to support the verdict and we can not find from the record that the court below erred in refusing to set it aside. The judgment is therefore affirmed.